IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EVELYN RIVERA-COLON, ET AL

Plaintiff

v.

PEDRO TOLEDO-DAVILA, ET AL

Defendants

**Civil No. 08-1590(SEC)**

**OPINION and ORDER**

Before this Court is a Motion to Dismiss filed by co-defendants, Pedro Toledo ("Toledo"), Jose Figueroa Sancha ("Figueroa"), and Wally Matos ("Matos") (Docket # 69), joined by Felipe Ortiz Diaz ("Ortiz"), Benjamin Rodriguez ("Rodriguez"), Francisco Quijano ("Quijano"), Felix Bauzo ("Bauzo"), Israel Lozada ("Lozada"), Carlos Toledo ("C. Toledo"), Eddi Vicente Rivera ("Rivera"), Carlos Guzman ("Guzman"), Ricardo Gonzalez ("Gonzalez"), Cesar Ostolaza ("Ostolaza"), Julio Fermaint ("Fermaint"), Enrique Mena ("Mena"), and Eric Velazquez ("Velazquez") (collectively, "Defendants"). Dockets ## 102 & 146. Plaintiffs, Evelyn Rivera-Colon ("Rivera-Colon"), and her two sons E.P.R. I and E.P.R. II (collectively "Plaintiffs"), opposed.[1]  Dockets ## 88 & 102. After considering the pleadings and the applicable law, the Motion to Dismiss is hereby **GRANTED in part** and **DENIED in part**.

**Factual and Procedural Background**

This suit makes claims for a series of incidents, which Plaintiffs allege constitute part of a larger pattern of racially motivated police brutality and harassment in the predominantly Afro-Caribbean Puerto Rico community of Villa Cañona in the Municipality of Loiza. The allegations are as follows:

---

[1]E.P.R. I is a minor of 16 years of age. E.P.R. II is 24 years of age, but he has severe mental disabilities and Rivera-Colon is his legal guardian.

**CIVIL NO. 08-1590 (SEC)**                                                                 **Page 2**

Plaintiffs allege that on May 30th, 2007, unidentified Puerto Rico Police Department ("PRPD") agents approached E.P.R. I as he was walking down a road near his house and, without provocation, struck him in the leg with a nightstick. Docket # 144 at 10. The Complaint also alleges that the officers then followed E.P.R. I  to his aunt's home, where they "indiscriminately pepper spray[ed] through the windows into the house where at least ten people were gathered and became affected." Id. Rivera-Colon soon rushed to the scene with her other son, E.P.R. II, who Plaintiffs aver has developmental disabilities. The Complaint then narrates that the same PRPD officer used pepper spray on E.P.R. II, and when Rivera-Colon intervened on his behalf, telling them of his disability, she too was sprayed. Id. at 11-12. Plaintiffs allege that on this occasion the intervening officers wore face coverings, and concealed the name tags on their badges.[2] Both E.P.R. I and E.P.R. II  received treatment at a local health clinic as a result of the incident. Id. Because she felt that at no time she nor her sons threatened the PRPD officers, Rivera-Colon filed an administrative complaint before the Auxiliary Superintendent's Office of Public Integrity ("PRPD Public Integrity"), which Plaintiffs allege was not investigated.

Various months later, on August 8, 2007, E.P.R. II was riding his bicycle when agents Jose Delgado-Ubiles ("Delgado"), Mena, and Velazquez allegedly started to pursue him in their patrol car. Id. at 13. The police vehicle allegedly struck E.P.R. II, causing him to fall to the ground. Id. As the officers exited the vehicle the Complaint avers that neighbors tried to inform Delgado, Mena, and Velazquez about his disability, but the officers handcuffed E.P.R. II and made him lay face-down against the ground. Id. At this point he was allegedly held and beaten. The officers then departed, allegedly leaving E.P.R. II on the ground, in pain. After being

_____

[2] The Complaint alleges that these included some combination of Lozada, C. Toledo, Rivera, Guzman, Gonzalez, Ostalaza, or Fermaint (collectively, "Tactical Agents"). Delgado, Mena, and Velazquez were also  PRPD officers assigned to the Tactical Operations Division in the Carolina Area.

**CIVIL NO. 08-1590 (SEC)**                                                    **Page 3**

informed of the altercation, Rivera-Colon came home to find E.P.R. II injured and distressed. Id. at 14. She then called the PDPR to file a complaint at the Loiza station, and two officers came to take the complaint. E.P.R. II had to receive treatment at the local clinic that evening, allegedly as a result of Delgado, Mena, and Velazquez's use of excessive force. Id. at 15.

A third incident is alleged to have occurred on the morning of March 20, 2008, when E.P.R. II left his house on his bicycle. At the street-corner, he encountered nearly fifteen (15) police officers for the PRPD's Narcotics Unit, who are alleged to have had their badges and name tags covered. Id. at 16. After seeing the officers, E.P.R. II allegedly started to pedal away in fear, at which point one of the officers yanked him off his bicycle, despite the fact that a neighbor shouted to the officer that E.P.R. II was disabled. Plaintiffs maintain the officer then punched E.P.R. II various times and held him against the ground. Rivera-Colon then came to her balcony and began to shout at the officers regarding E.P.R. II's mental disability, but they allegedly responded by mocking her. When she allegedly told the officers that she had seen them before and that they should know of E.P.R. II's disabilities, they threatened her with arrest. Id. at 17. After the situation ended, E.P.R. II once again went to the local health clinic for first aid, and Rivera-Colon filed another administrative complaint, this time with Sgt. Juan Davila ("Davila"). Plaintiffs aver that the police did not have probable cause to intervene with E.P.R. II. Id. at 18.

In addition to these incidents, where administrative complaints were filed, Plaintiffs aver that the alleged events narrated above constitute part of ". . . a pervasive pattern and practice of police abuse adopted years ago by members of the Narcotics and Tactical Operations Divisions of the P.R.P.D. in the Carolina area, in which defendants target residents of the Villa Cañona Community." Id. at 19.

**CIVIL NO. 08-1590 (SEC)**                                                    **Page 4**

This is allegedly evidenced by a July 11, 2008, meeting between Matos, community leaders, and various organizations, including the ACLU. Furthermore, Plaintiffs allege that Toledo and other supervisors should have been aware of the abuse through his weekly meetings with Matos and Rodriguez.[3] Id. at 20. They also aver, although only specifically in supplemental motions, that in August of 2007 the Puerto Rico Civil Rights Commission ("the Commission") sent a letter to Toledo informing him of its concern regarding alleged acts of police brutality committed against young people in Villa Cañona, Loiza. The letter also informs Toledo that lawyers from the Commission had attended a meeting with residents in July of that year to discuss those concerns. Docket # 39-2. The Commission informed Toledo that PRPD's interventions ". . . could reflect a pattern of discrimination based on the race and social status of an underprivileged segment of Puerto Rican society . . ." Docket # 39-2.

In light of these facts, which must be considered at face value at this stage, but may be disproved at a further point in the case, Plaintiffs have made a series of claims predicated on alleged violations of federal civil rights under 42 U.S.C. 1983 ("Section 1983") and local law. At the present stage this Court will only discuss Plaintiffs' federal causes of action, which are based on Section 1983 claims for alleged violations of the United States Constitution. To wit, these include, Plaintiffs' Fourth Amendment right to be free from false arrest and to be free from excessive use of force, substantive due process under the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment.

Defendants have responded to the complaint with the Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6) averring that some of Plaintiffs' claims for monetary damages are barred by

---

[3] As to specific knowledge of the alleged situation in Villa Cañona, Plaintiffs plead: "Aside from the administrative complaints filed by plaintiffs in each of the incidents narrated above, during the last year civil rights organizations in Puerto Rico, including the Puerto Rico Bar Association and the Civil Rights Commission, both requested that defendant Pedro Toledo-Dávila investigate the incidents of police abuse in Villa Cañona, and adopt effective measures to stop the practice of Police abuse against residents of this community." Docket # 144 at 119.

the Eleventh Amendment. They also aver that facts of the complaint fail to plead a cognizable claim for relief under Section 1983 as to the supervisory liability of some defendants, and that Plaintiffs claims under the Fifth, Fourth (for false arrest and excessive force), and Fourteenth Amendments (equal protection and substantive due process) are also defective. Plaintiffs finally argue that Plaintiffs lack standing to sue, and that, in any event, Defendants are protected by the doctrine of qualified immunity.

**Standard of Review**

It is well known that, "the general rules of pleading require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Gargano v. Liberty Int'l Underwriters, 572 F.3d 45, 49 (1st Cir. 2009) (FED. R. CIV. P. 8(a)(2)).  The purpose of this is to give a defendant fair notice of the claims against him and their grounds. Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555,  127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Therefore, "even under the liberal pleading standards of FED. R. CIV. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 127 S. Ct. at 1965).  Although complaints do not need detailed factual allegations, the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility  that a defendant has acted unlawfully." Twombly, 127 S. Ct. At 1965; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

A plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. At 1965. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008). Of course, this Court

**CIVIL NO. 08-1590 (SEC)**                                                    **Page 6**

need not give credence to ". . .conclusions from the complaint or naked assertions devoid of further factual enhancement." <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 266 (1st Cir. 2009) (citing <u>Ashcroft v. Igbal</u>, 129 S. Ct. 1937, 1960, 173 L. Ed. 2d 868 (2009)); <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007)). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at1949.

### Applicable Law & Analysis

*Eleventh Amendment*

Defendants argue that Plaintiffs have requested monetary damages against Matos in his official capacity, as PRPD Chief in the Carolina Area, but that said claim is barred on the basis of Eleventh Amendment immunity. The Eleventh Amendment protects state officials in their official capacity from damages actions. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity for monetary relief is an action for the recovery of money from the State. <u>Ford Motor v. Dept. of Treasury</u>, 323 U.S. 459 (1945); <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989). However, this immunity does not preclude claims for injunctive relief for future actions. <u>Redondo-Borges v. U.S. Dept. Of Housing and Urban Dev.</u>, 421 F.3d 1, 7 (1st Cir. 2005). Therefore all claims for damages against Defendants in their official capacities are **DISMISSED with prejudice**, but the motion to dismiss as to injunctive relief under the Eleventh Amendment must be **DENIED**.

*Supervisory Liability*

Besides the Tactical Officers and the Narcotics Officers alleged to have directly intervened with Plaintiffs this suit also involves claims against several PRPD employees in their supervisory capacity. To wit, Toledo acted as Superintendent of the PRPD; Ortiz was at the time

**CIVIL NO. 08-1590 (SEC)**                                                                 **Page 7**

of the Complaint, Auxiliary Superintendent of Field Operations for the PRPD in the Carolina

Area; Matos and Rodriguez were Chief Commanders of the Carolina Area PRPD department;

Quijano acted as Supervisor of the PRPD Tactical Operations Division in the Carolina Area;

Bauzo acted as Director of the Narcotics Division for the Carolina Area. Defendants aver that

Plaintiffs' allegations against the abovementioned supervisory Defendants for being

"responsible for the actions and policies that led to the events described in this complaint."

(Complaint Par. 14 and 18), and that the other defendants acted pursuant to the authority

delegated by Toledo and Matos, do not meet the applicable pleading standards for a Section

1983 claim.

They also correctly point out that there is no *respondent superior* liability, and

supervisors are not automatically liable for the acts those under their command. Carmona v.

Toledo, 215 F.3d 124, 132 (1st Cir.  2000). Under First Circuit case law, "supervisors may only

be found liable on the basis of their own acts or omissions." Febus-Rodriguez v. Betancourt-

Lebron, 14 F.3d 87, 91 (1st Cir. 1994). Supervisory responsibility can only constitute a claim

under Section 1983 if "(1) the behavior of [his] subordinates results in a constitutional violation,

and (2) the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the

sense that it could be characterized as supervisory encouragement, condonation or acquiescence

or gross negligence amounting to deliberate indifference." Pineda v. Toorney, 533 F.3d 50, 54

(1st Cir. 2009)(citing Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)).

Therefore, for Defendants behavior to equate to a possible violation this Court ". . . must find

that [the supervisory Defendants] knew of the risk of constitutional violations . . . but failed to

take reasonable steps to abate that risk." Rodriguez-Rivero v. Toledo-Davila, 2009 U.S. Dist.

LEXIS 102885 (D.P.R. 2009);  Burrell v. Hampshire County, 307 F.3d 1, 7-8 (1st Cir. 2002).

They also may be liable if they encouraged, condoned, acquiesced, or were deliberately

**CIVIL NO. 08-1590 (SEC)**                                                     **Page 8**

indifferent to the behavior of their subordinates, which requires effective notice. Febus-Rodriguez, 14 F.3d at 93.

The Complaint does not compellingly plead a racial motivation for the alleged use of excessive force, nor does it directly tie these events in to the alleged existence of a larger trend of profiling, besides the fact that they involve allegations of excessive force in Villa Cañona. Furthermore, nothing in the complaint suggests that high ranking officials were aware of the specific incidents involving Plaintiffs. Of course, the public meetings might in some other circumstances suffice, but the alleged general trend has only been linked to the events at bar through conclusory statements, which simply cannot pass the post-Iqbal standard. What is concerning is that nothing was done at the unit level regarding Rivera-Colon's alleged complaints. However, no facts have been pled to indicate that the inaction went far up the chain of command. Given this, only the immediate supervisors should have plausibly known about the series of events described in the Complaint. However, it is plausible they might have been wilfully indifferent to the allegedly violent acts of the officers who intervened with Plaintiffs.

Moreover, this Court finds that no solid allegations regarding the training of PDPR officers has been proffered. Therefore, no supervisory liability can be found as to Matos, Rodriguez, Ortiz, and Toledo, and all Section 1983 claims against them shall be **DISMISSED with prejudice**. Nevertheless, the motion to dismiss as to Quijano and  Bauzo for supervisory liability must be **DENIED**.

*Fifth Amendment*

The Fifth Amendment provides that "[n]o person shall... be deprived of life, liberty, or property, without due process of law..." U.S. CONST. AMEND. V. This amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. Gerena v. Puerto Rico Legal Services, 697 F. 2d 447, 449 (1st Cir.

**CIVIL NO. 08-1590 (SEC)**                                                                                   **Page 9**

1983); see also Martínez-Rivera v. Sánchez-Ramos, 498 F. 3d 3, 8 (1st Cir. 2007).    The

Complaint does not allege that any of the Defendants are federal actors, but instead establishes

that they are Commonwealth officials acting under color of state law. Accordingly, their claims

pursuant to the Fifth Amendment are hereby **DISMISSED with prejudice.**

*Fourth Amendment False Arrest*

The First Circuit has summarized the requirements for a typical false arrest claim as

follows: "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of

the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant had

no privilege to cause the confinement." Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 n. 6

(1st Cir. 1995) ; see also Rodriguez v. Garcia, 403 F.Supp. 2d 174, 177 (D.P.R. 2005). If taken

as true, the facts of the Complaint suggest that Defendants did not have probable cause to

intervene or stop Rivera-Colon, or her two sons, during the various incidents. However, the

question remains if such brief interventions can constitute arrests, or confinements.

In the case of Rivera-Colon, this Court understands that she was not detained by the

alleged use of pepper spray or threat of arrest. Furthermore, Plaintiffs' citation of Henderson

v. Munn, 439 F.3d 497, 503 (8th Cir. 2006), is misleading because the use of pepper-spray came

in conjunction with an unquestionable detainment when the Eighth Circuit was addressing the

use of excessive force. The facts surrounding the third incident involving E.P.R. II are less

clear, because the Complaint avers that he was pinned down. Nevertheless, this Court finds that

these facts are more appropriately addressed under an excessive force claim. Therefore,

Plaintiffs' cause of action for Fourth Amendment false arrest is **Dismissed with prejudice**.

*Fourth Amendment Excessive Force*

Excessive force claims ". . . must show that the defendant officer employed force that

was unreasonable under the circumstances." McLeod-Lopez v. Algarin, 602 F.Supp.3d 330, 341

**CIVIL NO. 08-1590 (SEC)**                                                      **Page 10**

(D.P.R. 2009)(citing Jennings v. Jones, 449 F.3d 2, 11 (1st Cir. 2008)); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985).  This is an objective standard, to be determined "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. This must be judged through the lens of "a reasonable officer on the scene." Id.

Here, the Complaint has presented three separate incidents, which if true, clearly constitute the infliction of unnecessary pain on each of the three (3) Plaintiffs, especially E.P.R. I and E.P.R. II. The Complaint avers three separate unprovoked interventions, all involving some sort of violence on the part of the PRPD against Plaintiffs. Furthermore, the use of pepper spray on Rivera-Colon could also have been unreasonable depending on the circumstances. Taking the facts of the Complaint as true, she does not appear to have posed an immediate threat to the officers, or been at risk of evading arrest by flight.

At present, the allegations are sufficient to establish a Fourth Amendment Claim for excessive force. As such, the motion to dismiss on these grounds will be **DENIED.**

*Fourteenth Amendment Substantive Due Process Clause*

Fourth Amendment excessive force generally supplants Fourteenth Amendment substantive due process. That is, "[t]he Supreme Court has held that all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of … [the] 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Mcleod-Lopez, 603 F.Supp. 2d at 340(citing Graham, 490 U.S. at 395) (internal citations omitted). The threshold question is whether the behavior is egregious and outrageous enough to shock the contemporary conscience. Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006).  This generally involves the intentional infliction of harm. Id.

**CIVIL NO. 08-1590 (SEC)**                                                                      **Page 11**

1

2

3       However, in the case at bar, Plaintiffs' substantive due process claims are better posed

4  as excessive force claims. Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1ˢᵗ Cir. 2008);

5  see also Graham, 490 U.S. at 395. They are thus better analyzed under the Fourth Amendment's

6  reasonableness standard. Id.  This is because ". . . an alternative constitutional claim is available

7  in this case, Plaintiff's substantive due process claims on this front cannot prevail." McLeod-

8  Lopez v. Algarin, 603 F.Supp. 2d 330, 340 (D.P.R. 2009).  Plaintiffs´ substantive due process

9  claims are therefore **DISMISSED with prejudice**.

10      *Fourteenth Amendment Equal Protection Clause*

11      An equal protection claim based on alleged racial profiling requires showing ". . . that

12 the challenged law enforcement practice had a discriminatory effect and was motivated by a

13 discriminatory purpose." Carrasca v. Pomeroy, 313 F.3d 828, 834 (3ʳᵈ Cir. 2002); Marshall v.

14 Colombia Lea Rel'l Hosp., 345 F.3d 1157, 1168 (10ᵗʰ Cir. 2003).  The Complaint does not

15 compellingly plead a racial motivation for the alleged use of excessive force. In fact, none of

16 the three (3) alleged incidents include averments regarding racially disparaging language. The

17 general allegation that Villa Cañona is subject to racial discrimination does not suffice  to make

18 a plausible pleading regarding the specific events in this Complaint. This Court finds that such

19 a statement is conclusory in the absence of specific facts to link the general phenomenon to the

20 discreet acts constituting the claim. Furthermore, the allegations are not averted to be connected

21 to any other trends within Puerto Rico. Therefore, this Court shall grant the motion to dismiss

22 on equal protection grounds, and those claims are therefore **DISMISSED with prejudice**.

23

24

25      *Qualified Immunity*

26

**CIVIL NO. 08-1590 (SEC)**                                                              **Page 12**

Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In determining whether a defendant is entitled to qualified immunity, courts shall apply a three-part test: "(1) whether the plaintiff has alleged a constitutional violation; (2) whether the law was clearly established that defendants' action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right." Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004); Jennings, 499 F.3d at 11.

In the case at bar Plaintiffs have presented a valid Section 1983 cause of action against certain Defendants for the use and condonation of excessive force. If true, a reasonable police officer, or supervisor, would not have believed that the incidents described above were lawful in light of clearly established law. Therefore, the motion to dismiss on these grounds must be **DENIED.**

**Conclusion**

Based on the foregoing, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**, and Plaintiff's Fifth and Fourteenth Amendment claims are **DISMISSED with prejudice**, as are all claims against Matos, Rodriguez, Ortiz, and Toledo.

**IT IS SO ORDERED**.
San Juan, Puerto Rico, this 24th day of March, 2010.

> *S/Salvador E. Casellas*
> Salvador E. Casellas
> U.S. District Judge